IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MALCOM MAXWELL RYIDU-X #273-575,
  a/k/a  RICHARD JANEY                      :

          Plaintiff                   :

         v.                      :   CIVIL ACTION NO. CCB-14-1735

LT. JAMES PENNINGTON, SUPERVISOR,[1] :
  WCI CORRECTIONAL SUPPLY OFICER
RUSSELL AMBROSE, SUPERVISOR,     :
  MCIH CORRECTIONAL SUPPLY
    OFFICER                               :

         Defendants         :

**MEMORANDUM**

Plaintiff Malcom Maxwell Ryidu-X, a prisoner confined within the Maryland Division of Correction ("DOC"), claims that his right to equal protection has been violated because he has been denied access to prison commissary services based on his use of a religious name. Now pending is a motion to dismiss or, in the alternative, motion for summary judgment filed by Lt. James Pennington and Russell Ambrose. A hearing is not needed to resolve the issues presented in this case. *See* Local Rule 105.6 (D. Md. 2014).  For reasons set forth below, the defendants' dispositive motion, construed as a motion for summary judgment, will be granted.

Background

On May 29, 2014, Ryidu-X filed this civil rights action pursuant to 42 U.S.C. § 1983 against prison personnel ("the Correctional Defendants") and unidentified employees of Keefe Commissary Network, LLC ("Keefe"), the outside contractor charged with providing prison commissary services, claiming that they have violated his right to equal protection as well as his

---

[1] The Clerk shall amend the docket to reflect that Lt. James Pennington and Russell Ambrose are defendants.

First and Eighth Amendment rights, from "April 27, 2013 through this 28th day of May 2014," by denying him "access to inmate commissary services to purchase personal hygiene and stationery materials, etc." because of his "religious practices and choice of name." (ECF No. 1 at 5-6, 9).[2]

On July 6, 2015, the Honorable William D. Quarles, Jr.[3] entered a memorandum opinion and order dismissing defendants Keefe, DOC, Western Correctional Institution ("WCI"), Maryland Correctional Institution-Hagerstown ("MHI-H"), two John Does, Tony Unknown, Lee Ann Crawford, Maureen Reid, and granting the Correctional Defendants' motion for summary judgment with regard to Ryidu-X's First, Eighth, and Fourteenth Amendment claims.  Judge Quarles denied summary judgment as to the remaining claim regarding equal protection, and required Ryidu-X to supplement his complaint to name the Correctional Defendants responsible for overseeing the performance of Keefe employees at Jessup Correctional Institution ("JCI") and MCI-H.  (ECF Nos. 31 and 32).  The plaintiff complied with the court order, naming defendants Ambrose and Pennington. (ECF No. 37 at 2).  In turn, these defendants have submitted a dispositive response to the complaint (ECF No. 42), which is opposed.[4]  (ECF No. 44).

This lawsuit derives in pertinent part from an earlier action wherein Ryidu-X asserted that prison personnel at JCI violated his constitutional rights by denying commissary, mail order privileges, and access to prison records when he used his adopted Islamic name.  *See Ryidu-x v. Wolfe*, No. 11-358 (D. Md.).  Judge Quarles granted summary judgment to the defendants,

---

[2] On February 23, 1998, Ryidu-X, then known as Richard Edward Janey, was sentenced to 25 years in prison by the Circuit Court for Anne Arundel County in Criminal No. 02K95000498. The Circuit Court for Baltimore City granted his subsequent request to change his name to "Malcom Maxwell Ryidu-x" on October 28, 1999 in Civil No. 24D98229021.

[3] Judge Quarles has retired and the case has been reassigned.

[4] Attached to the opposition response are several Administrative Remedy Procedure ("ARP") grievances in which the plaintiff indicates he continues to experience problems with obtaining commissary supplies while housed at MCI-H. (ECF No. 44-1 at 1-8).

finding insufficient facts to establish a violation of constitutional magnitude with regard to Ryidu-X's First Amendment claim, and further finding that Ryidu-X failed to establish actual harm based on his due process claim that he had been denied access to various prison records. *Ryidu-x v. Wolfe*, No. 11-358, ECF No. 36 at 6-7.

The United States Court of Appeals for the Fourth Circuit appointed counsel to represent Ryidu-X on appeal. *Ryidu-x v. Wolfe*, No. 11-0358, ECF No. 42. On April 4, 2013, Ryidu-X, through counsel, entered into a settlement agreement with prison personnel and the Maryland Department of Public Safety and Correctional Services ("DPSCS"), wherein:

> Within Fourteen (14) days of the execution of this Settlement Agreement, (a) Appellant Ryidu-X will be transferred to Eastern Correctional Institution (ECI) or Western Correctional Institution (WCI) on either protective custody or administrative segregation status and be held in a single cell; (b) Appellant Ryidu-X will be provided at no cost to him an identification card with his religious name, Malcom Maxwell Ryidu-X, on the front of the card; and (c) the Deputy Secretary will issue a memorandum order that states as follows:
>
>> Malcom Maxwell Ryidu-X, who was committed under the name Richard Edward Janey, has encountered problems accessing prison services, including commissary, mail orders and packages, and records, when using his legal/religious name: Malcom Maxwell Ryidu-X. Under DPSCS/DOC regulation, Mr. Ryidu-X is entitled to use his legal/religious name to access prison services. All DPSCS/DOC personnel are HEREBY ORDERED to take the necessary steps to comply with DPSCS/DOC regulation to ensure Mr. Ryidu-X's ability to access prison services using his legal/religious name. This order is mandatory.
>
> The order will be distributed directly to each of the following: two regional executive directors, two correctional directors, two wardens, the wardens' assistant wardens, the warden's security chiefs, and Appellant Ryidu-X's case manager. The security chiefs will give a copy of the order to the Captains who will ensure that it is promulgated to the security staff of the housing tier where Appellant Ryidu-X is housed. A copy of the order also will be given to Appellant Ryidu-X's counsel with the understanding that

>    Appellant's counsel will give a copy to Appellant Ryidu-X. A copy of the order also will be placed in Appellant Ryidu-X's basefile.
>
>    Within fifteen (15) days of the execution of this Settlement Agreement, the Deputy Secretary's Office will submit to Appellees' counsel a compliance report, showing the status of the terms mentioned in paragraph 1, above.

(ECF No. 21-2 at 2-3). An order of voluntary dismissal of the appeal was subsequently issued. *Ryidu-x v. Wolfe*, No. 11-0358, ECF No. 43.

As noted by Judge Quarles in the instant action, "implementation of the Settlement Agreement has not been seamless." (ECF No. 31 at 4). The alleged misconduct in this case began in April 2013, when Ryidu-X was housed at WCI. (ECF No. 1 at 6). He was transferred from WCI to MCI-H on or about December 17, 2013. (*Id.*) Thus, his equal protection claim spans conduct occurring at two prisons, WCI and MCI-H.

In his declaration, defendant Pennington, who has held the position of WCI's Correctional Supply Officer Supervisor since 2001, describes the processing of prisoner commissary orders. (ECF No. 42-6 at ¶¶ 1, 5). Pennington asserts that prisoners order commissary items using forms called "scantrons," which are collected by officers and taken to WCI's business office, where they are forwarded to Keefe, a private provider of prison commissary services. (*Id.* at ¶ 5). Pennington does not collect the scantrons and has no access to them until after copies are sent to Keefe. (*Id.* at ¶ 6). When commissary items arrive, they are distributed by Keefe employees; Pennington's only role in the distribution process is to monitor the items by X-ray to ensure that contraband does not enter the prison. (*Id.* at ¶¶ 7-8). Pennington is unaware of any discrimination on the part of those he supervises or Keefe employees, (*id.* at ¶¶ 10-11), and he plays no role in the updating of prisoner identification information in the DPSCS computer system. (*Id.* at ¶ 12). Defendant Ambrose, the Correctional

4

Supply Officer Supervisor at MCI-H since 2005, makes the same assertions in his declaration. (ECF No. 42-7 at ¶¶ 1, 5-9).

On January 7, 2014, MCI-H Chief of Security Ronald B. Brezler learned that Ryidu-X's ID card had been confiscated. (ECF No. 42-4 at ¶5).  Brezler acted immediately to provide a new ID card with Ryidu-X's religious name on the front of it and the name under which he was incarcerated on the back.  (*Id.*)  Brezler also sent an email to all MCI-H supervisors, with a request to share it with their staff, stating:

> To all MCI-H personnel and Service Providers - Inmate Malcom Maxwell Ryidu-X #273575 is committed to the DPSCS as Richard Janey #273575. Based on a Settlement Agreement in the United States Court of Appeals for the Fourth Circuit, all departments and services shall recognize and accept requests from Malcom Maxwell Ryidu-X #273575 even though his committed name is Richard Janey in OBSCIS. Inmate Malcom Maxwell Ryidu-X #273575 can be positively identified by his State ID which reflects this name.

(*Id.* at ¶ 6).

The defendants further detail steps taken to address Ryidu-X's concerns about using his religious name to obtain telephone services and commissary products.  When Assistant Warden Keith L. Lyons learned on April 4, 2014 that Ryidu-X alleged that he had been denied commissary services and could not use the inmate telephone system using his religious name, he forwarded these concerns to the private contractors, GTL (inmate telephones) and Keefe, for handling. (ECF No. 42-5 at ¶ 4).  For the vendors to recognize Ryidu-X's religious name, there had to be a computer system reconfiguration. (*Id.* at ¶ 5). DPSCS Procurement Specialist James Dipino advised that the system configurations would be made to take effect at the end of May. (*Id.*) The computer reconfiguration occurred on May 19, 2014.  (*Id.* at ¶ 6).  Keefe receives uploads of inmate information from the DPSCS computer systems daily. (ECF No. 42-8 at ¶ 4). The plaintiff is currently listed in the DPSCS computer systems as "Ryidu-x, Malcom." (*Id.*)

Dipino asserts that he has not received any complaints from Ryidu-X concerning access to telephone or commissary services since the reconfiguration of the DPSCS computer systems. (*Id.*)

Ryidu-X refutes Dipino's assertion that reconfiguration of the computer system has solved his problem with commissary access, pointing to his July 15, 2015 Administrative Remedy Process ("ARP") grievance stating that his commissary request on June 29, 2015 was improperly rejected. (ECF No. 44-1 at 1-2). Ryidu-X also provides copies of ARP submissions concerning commissary problems that occurred on May 4, May 11, May 15, June 29, July 2, and September 7, 2015. (*Id.* at 3-8).

Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Analysis

It is undisputed that prisoners retain the right to legal recognition of adopted religious names, and prison authorities may not condition services or benefits upon a prisoner's waiver of such First Amendment rights. *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982); *see also Hakim v. Hicks*, 223 F.3d 1244, 1248 (11th Cir. 2000); *Ali v. Dixon*, 912 F.2d 86, 90 (4th Cir. 1990).[5]

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "To succeed on an equal protection claim, a [prisoner] must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If the discrimination was based on a plaintiff's membership in a suspect class, the differential treatment must be narrowly tailored to a compelling state interest in order to

---

[5] In fact, in *Ryidu-X v. Wolfe,* No. 11-358 (D. Md.), the correctional defendants provided copies of a DOC management publication concerning inmate name changes and the DOC's Request for Inmate Name Change paperwork that, read together, demonstrate that the DOC permits a prisoner to change his name even if the prisoner does not obtain a court order recognizing the name change. (*Id.*, ECF No. 31-1). DOC documents suggest that the 1999 court order acknowledging Ryidu-X's name change may have been a part of his prison file, as evidenced by his successful ARP grievance concerning his proper name filed during the time he was incarcerated at WCI. (*Id.*, ECF No. 1-1 at 8). A response to Ryidu-X's ARP request, dated June 26, 2009, states that his request was "meritorious" and requires commissary personnel to recognize Ryidu-X's legal name change and allow him commissary privileges under that name. (*Id.*)

survive equal protection scrutiny; otherwise, the plaintiff must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440-42.

The key to a prisoner's equal protection claim requires a showing "that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). "Accordingly, while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system."[6] *Morrison*, 239 F.3d at 655 (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.")).

Ryidu-X believes he has been treated differently by those involved in commissary purchasing because he legally changed his name for religious reasons. (ECF No. 1 at 5). But the defendants do not assert that Ryidu-X is, or should be, restricted in his use of the commissary due to any security concerns, and the policies they have put in place in regard to Ryidu-X do not discriminate on the basis of his religious name.

While prison personnel responding to his ARP grievances demonstrate that on some occasions Ryidu-X's commissary purchases were delayed due to a state holiday or because the items were not available, (ECF No. 44-1 at 1, 7), it appears that Ryidu-X's purchases were on

---

[6] A prisoner's rights under the Constitution must not be inconsistent with his or her status as a prisoner. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Because of the exigencies of prison administration, prison regulations must only be reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott,* 490 U.S. 401, 409-10 (1989).

occasion simply not delivered. These failures, however, do not appear to be based on any discriminatory action by the defendants. Ryidu-X has failed to demonstrate that any animus existed against the "class" of prisoners who have converted to Islam during incarceration and changed their names. Indeed, the affidavit he submitted in his motion to strike defendant Keefe's dispositive motion, signed by Ryidu-X and 11 fellow prisoners (none of whom appear to have an "Islamic" name) merely supports the claim that the State's commissary contractor may be inept or inefficient. (ECF No. 25-1 at 1-3). Such a showing does not support a constitutional claim.

## Conclusion

For the reasons stated above, the court will grant the defendants' motion for summary judgment. A separate order follows.

<u>June 13, 2016</u>                    _____/S/_____
(Date)                                        Catherine C. Blake
                                              United States District Judge